McALLISTER v. CITY OF FROST.

No. 2116.

Court of Civil Appeals of Texas. Waco.

Sept. 28, 1939.

Rehearing Denied Oct. 19, 1939.

H. B. McAllister, in pro. per.

Richard & A. P. Mays, of Corsicana, for defendant in error.

## PER CURIAM.

This is a second appeal of the same suit. See McAllister v. City of Frost, Tex.Civ. App., 62 S.W.2d 232.

This suit was brought by H. B. McAllister against the city of Frost to recover certain compensation alleged to be due him as engineering fees for services rendered by him in the construction of a water-works system for said municipality. A trial before a jury resulted in judgment for the defendant. The plaintiff appealed.

In 1925 said municipality purchased from the Frost Artesian Well Company a water-works system operated by the latter in said city, and began the construction of certain improvements in connection therewith. The cost of the old plant was $20,000. McAllister was employed to make a valuation of said old plant and supervise the construction of the improvements. He contended that the city contracted in writing to pay him for his services a commission of 5% of the total cost of the water-works system, which included the $20,000 paid for the old plant. The city denied the execution of such written contract and contended that it had contracted to pay him only 5% of the cost of the new improvements. The city paid him his commission for the construction of the new improvements but refused to pay him a commission of 5% of the purchase price of the old plant. The jury found that the city had entered into a written contract with McAllister for his services in connection with the construction of the water-works system, but found that the city had not agreed to pay him a commission of 5% of the total cost of the water-works system. Based on such finding, the court denied McAllister any recovery. The testimony showed that a windstorm had destroyed all of the records of the municipality, and McAllister testified that he had lost his copy of the contract entered into by the city. The parties necessarily had to rely on parol testimony. McAllister testified that he was to receive a commission of 5% on the total cost of the water-works system, which included the purchase price of the old plant. The city councilmen testified that he was to be paid a commission of 5% only on the new improvements and was not entitled to any commission on the purchase price of the old plant. There was therefore a direct conflict in the testimony on the issue, and, as a consequence, we are not at liberty to disturb the jury's finding thereon.

McAllister further contended that on February 10, 1927, after the completion of the improvements, the city council approved his claim for the amount now sued for and ordered same paid, and that on March 1, 1927, it entered an order authorizing the issuance of warrants for the payment thereof; and that said orders were never legally set aside, and that, as a consequence, the municipality is now without authority to question the validity of his claim. The city denied these contentions and further alleged that if any order was ever entered approving McAllister's claim and directing the issuance of warrants in payment therefor, the same was procured by fraud on the part of McAllister and that as soon as such fraud was discovered the order was set aside by a vote of the council. As stated above, the city's records had been destroyed and both parties were compelled to rely largely on oral testimony. McAllister testified that he was present at a meeting of the city council on February 10, 1927, at which time there came up for consideration the matter of unpaid claims for the construction of a water-works system, and that his claim for the amount sued for, along with others, was presented to and approved by the council and ordered paid; that it was found that the cost of the system had exceeded the original estimate by approximately $17,000.00, and it was then decided that deficiency warrants should be issued for the amount of these claims, and that on March 1, 1927, the council entered an order authorizing and directing that warrants be issued in payment therefor, plaintiff's claim being included therein. On the other hand, Wade Smith, mayor, denied that the council had ever voted to approve McAllister's claim. He testified that McAllister reported to him that it would be necessary to issue warrants for the payment of certain unpaid claims, and that the approval of the Attorney General would be required before such warrants could be issued; that he relied on McAllister to prepare the necessary papers for the issuance of such warrants; that Mc-

Allister prepared a transcript of date March 1, 1927, showing the names of the unpaid creditors and the amounts of their claims and presented same to him at his place of business and requested that he sign it in order that he, McAllister, might take it immediately to Austin for the approval of the Attorney General; that he did not know that a claim in favor of McAllister had been inserted therein; that he signed same without reading it; that such transcript was signed only by him and the city secretary and was never presented to nor acted on by the council as such. H. A. Scott testified that he was a member of the council at the time in question and was secretary thereof; that he signed the transcript for the issuance of the warrants at his place of business on the representation of McAllister that same was necessary in order to secure payment of the claims owing by the city, and that it was necessary that witness sign at once in order that he, McAllister, might take same immediately to Austin. He testified that he did not read the transcript and did not know the transcript contained a claim in favor of McAllister. He further testified that the matter was never presented to the city council for its approval, and that McAllister's claim was never in anywise approved nor the payment thereof authorized by the council. Scott and Smith were the only ones who signed said bond transcript. W. A. Ross testified that as far as he knew the matter of paying McAllister's claim was never voted on by the city council. J. E. Hobbs and A. H. Strain, the other councilmen, could not remember whether or not the matter was ever acted on by the council. J. C. Keitt was elected mayor in April, 1927. He testified that later, in June of the same year, it was discovered that McAllister had falsely included in the transcript above referred to a claim in his favor for the amount now sued for, and that upon such discovery the council immediately voted to cancel the purported order or transcript authorizing the issuance of such warrants. The jury found the warrant transcript, which included McAllister's claim, was never adopted by a vote of the council.

The authority to represent the city of Frost was vested in the city council. In order to bind the city it was necessary that the council act as a body. Consent or acquiescence of the individual members acting separately and not as a body was insufficient for the purpose. Neither could the mayor and city secretary bind the municipality to pay McAllister's claim merely by signing the warrant transcript above referred to, where such act had not been previously authorized by the council when acting as a body. 34 Tex.Jur. 457; 30 Tex.Jur. 190, 264, 323; King v. Guerra, Tex.Civ.App., 1 S.W.2d 373; City of Denison v. Smith, Tex.Civ. App., 260 S.W. 207; Penn v. City of Laredo, Tex.Civ.App., 26 S.W. 636; City of Floydada v. Gilliam, Tex.Civ.App., 111 S.W.2d 761.

From the evidence above referred to, it is apparent that there was a direct conflict in the evidence as to whether the council acting as a body ever approved McAllister's claim and authorized the payment thereof. The jury found the issue in favor of the city. It is a function of the jury and not the appellate court to pass on the weight of the evidence and the credibility of the witnesses and otherwise determine issues raised by conflicting evidence. In other words, where the evidence is thus in conflict and there is substantial evidence in the record, which, when viewed in the most favorable light, would support the verdict, we are not at liberty to set aside the verdict and substitute our opinion therefor. The jury evidently believed and accepted as true the testimony of the city councilmen who testified that the council as a body never at any time approved McAllister's claim. We must accept the verdict as true. Since the council never approved McAllister's claim in the first instance, we need not consider appellant's contention that where a municipality once approves a claim, it cannot rescind its action at a subsequent meeting.

The appellant was not represented in this court by counsel. He has presented his own brief. The brief is not in the form prescribed by the rules, and, as a consequence, we have had considerable difficulty in determining the issues. However, we have given the matter most careful consideration and have reached the conclusion that the record presents no reversible error.

The judgment of the trial court is affirmed.