**APOLLO TRANSPORTS, INC.,**
**Appellant,**

v.

**RAILROAD COMMISSION OF**
**TEXAS, Appellee.**

**No. 13163.**

Court of Civil Appeals of Texas,
Austin.

Jan. 7, 1981.

Rehearing Denied Jan. 28, 1981.

Thomas F. Sedberry, Lanham, Hatchell, Sedberry & Hoffman, Austin, for appellant.

Mark White, Atty. Gen., R. Lambeth Townsend, Asst. Atty. Gen., Austin, for appellee.

SHANNON, Justice.

Apollo Transports, Inc., filed with the Railroad Commission, an application to amend its existing specialized motor carrier authority found in Certificate No. 33985. Robertson Tank Lines, Inc., and J & L Truck Lines were protestants at the administrative hearing. The Commission, after hearing, entered its order denying the application.

Apollo filed suit in the district court to set aside the order of the Commission. After trial, the district court rendered judgment affirming the Commission's order. This Court will affirm that judgment.

Certificate No. 33985 empowered Apollo to transport: wood chips, shavings, bark, sawdust, flour and refuse, in bulk in tank vehicles, hopper vehicles, hydraulic unloading dump vehicles, cable unloading dump vehicles and tank-type gravity unloading dump vehicles.

By its application for amended authority, Apollo sought the right to transport "wood" chips, shavings, bark, sawdust, flour and refuse in bulk *in specialized equipment* . . ." (Emphasis added). By way of explanation, Apollo's application specifically stated: "This is an application to remove equipment restrictions and applicant does not seek duplicating authority."

Before the Commission may grant an application for a certificate of convenience and necessity authorizing operation as a specialized motor carrier, the applicant must establish by substantial evidence that: (1) the services and facilities of the existing carriers serving the territory are inadequate; (2) there exists a public necessity for

such service; and (3) the public convenience will be promoted by granting the application. Tex.Rev.Civ.Stat.Ann. art. 911b § 5a(d) (1964); *Railroad Comm'n v. Charlie Phillips Trucking*, 580 S.W.2d 341 (Tex. 1979).

In the case at bar, the hearings examiner determined, in effect, that Apollo failed to discharge its burden under Art. 911b to show inadequacy of existing facilities and service. Specifically, the examiner found that both protestants, Robertson Tank Lines and J & L Truck Lines, held specialized motor carrier certificates authorizing them to haul wood products in the territory; that both concerns operated equipment suitable for the transportation of wood products; and both lines were not operating their respective equipment at capacity. The Commission adopted the findings of fact and conclusions of law of the examiner.

■ Apollo does not challenge the agency's determination that Apollo had not discharged its burden of proving that the services and facilities of the existing carriers serving the territory were inadequate. Furthermore, Apollo does not challenge the efficacy of the Commission's findings with respect to the adequacy of the services and facilities of the existing carriers serving the territory. Accordingly, the Commission's findings with respect to adequacy of existing service stands and Apollo is bound by those findings. See *Texas St. Bd. of Pharm. v. Gibson's Discount Cent.*, 541 S.W.2d 884 (Tex.Civ.App.1976, writ ref'd n. r. e.).

Apollo complains, instead, in point of error four that the Commission "erred in failing to make findings of fact in support of modification." In this connection, Apollo correctly states that the agency's findings contain no facts concerning Apollo's financial condition, its present equipment and the manner in which that equipment is employed, and the needs of those industries presently utilizing its services.

As authority for its position, Apollo relies upon Art. 911b § 5a(d) which provides, in this respect, that the Commission is obligated to set forth its findings of fact should it *grant* an application. More specifically, Art. 911b § 5a(d) provides:

"The order of the Commission *granting* said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings· of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service." (Emphasis added).

■ Apollo failed to convince the Commission that the services and facilities of the existing carriers were inadequate. That proposition is supported by agency findings not questioned by Apollo. Accordingly, Apollo's other proof in support of modification of the certificate such as its financial condition, its present equipment and the manner in which the equipment is used, and the needs of the industries utilizing its services, is immaterial. Having concluded that Apollo failed to make a case for its application under Art. 911b § 5a(d), the Commission was not compelled to set out or comment upon immaterial facts, or facts that never had to be reached by the Commission to determine the case.[1]

Points of error one and two pertain to the refusal of the Commission to grant Apollo's motion to strike the protest of J & L Truck Lines. Nearly seven months after the agency hearing closed, Apollo filed with the Commission, its motion to strike the protest of J & L Truck Lines. In that motion, Apollo's president swore that subsequent to the hearing, the motor carrier authority of J & L Truck Lines, Inc., was transferred to another trucking concern and that J & L, therefore, possessed no motor carrier authority that conflicted with the application of Apollo. Apollo's president swore further that Apollo had been advised that the successor to J & L had no objection to the granting of Apollo's application.

---

1. See *State Banking Board v. Valley Nat. Bank*, 604 S.W.2d 415 (Tex.Civ.App.1980, application for writ pending), for a similar holding involving the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a § 16(b) (Supp.1980).

■ Apollo probably should have moved to reopen the hearing so that the facts alleged in its motion to strike could have been included in the hearings record. In any event, assuming *arguendo* the truth of the facts asserted in the motion to strike, the Commission's conclusion as to the adequacy of the existing service and facilities serving the area is still supported, of course, by the findings referable to Robertson Tank Lines. The points are overruled.

Apollo's third point of error concerns the Commission's refusal to determine whether its certificate of authority permits its present hauling operations. Sometime prior to Apollo's filing its application for amended authority, the Attorney General of Texas filed suit against Apollo in Polk County claiming that Apollo was hauling wood chips "in commercial motor vehicles and trailers of a type other than those authorized by Certificate No. 33985. . . ." The Polk County suit was still pending at the time of the Commission's hearing in this appeal.

The apparent reasoning for filing the application for amendment was that should the Commission grant the application, which would permit transportation "in specialized equipment," the carrier thereafter could avoid disputes with the Attorney General concerning the character of equipment it used to haul wood products. On the other hand, should the Commission conclude that Apollo already possessed authority under Certificate No. 33985 to transport wood products in its present vehicles, Apollo reasoned that the Commission would, perforce, dismiss the application for amendment. The point of error is not meritorious.

■ Apollo failed to prove that the existing service and facilities of the carriers serving the area were inadequate; therefore, the threshold requirement under Art. 911b § 5a(d) had not been satisfied. Thereafter, the responsibility of the Commission was simply to enter an order denying Apollo's application. The Commission had no duty to enter an order in the nature of an advisory opinion defining the limits of Certificate No. 33985.

Apollo's position in the agency hearing was that Robertson had created a virtual traffic embargo by its high-level of rates. After Apollo failed to show that shippers had negotiated with Robertson concerning its existing rate schedule, the hearings examiner refused to admit further evidence concerning the protestant's level of rates. The refusal of the examiner to admit such further evidence forms the procedural basis for Apollo's sixth point of error.

■ Rates are usually not an issue for consideration by the Railroad Commission or the Interstate Commerce Commission in determining whether public convenience and necessity requires a proposed operation. Nevertheless, the rule of the Interstate Commerce Commission is that the level of rates is a factor to be considered in such a proceeding where the applicant shows that existing rates are so unreasonably high as to constitute, in effect, an embargo. Trans-Cold Express, Inc., Extension, 98 M.C.C. 10, 12 (1965); see *Brink's Inc. v. United States,* 613 F.2d 1079 (D.D.C.1979). In such a situation, new service may be authorized because of the existing carriers' lack of interest in handling the traffic. *Alterman Transport Lines, Inc. v. United States,* 361 F.Supp. 664 (M.D.Fla.1973). One element of embargo is proof that the shippers attempted unsuccessfully to negotiate lower rates with the existing carriers. Trans-Cold Express, Inc., Extension, *supra.*

■ Assuming *arguendo* that the rule of the Interstate Commerce Commission should be followed, this Court has examined Apollo's bill of exceptions, and has concluded that, as a matter of law, the evidence tendered in the bill fails to establish an embargo.

The judgment is affirmed.

POWERS, J., not sitting.