AUSTIN NEIGHBORHOODS COUNCIL, INC., et al., Appellants,

v.

BOARD OF ADJUSTMENT OF the CITY OF AUSTIN, Texas, et al., Appellees.

No. 13735.

Court of Appeals of Texas, Austin.

Dec. 15, 1982.

Rehearing Denied Jan. 12, 1983.

Steven A. Fleckman, Scanlan, Buckle & Fleckman, Austin, for appellants.

Albert DeLaRosa, City Atty., Terrence L. Irion, Asst. City Atty., Austin, for Board of Adjustment of the City of Austin.

William H. Bingham, McGinnis, Lochridge & Kilgore, Austin, for Capitol Mortg. Bankers, Inc.

Michael J. Crowley, Brown, Maroney, Rose, Baker & Barber, Austin, for intervenor Rust Properties.

Before PHILLIPS, C.J., and EARL SMITH and BRADY, JJ.

PHILLIPS, Chief Justice.

This is an appeal from the trial court's affirmance of a decision of the appellee Austin Board of Adjustment. The Board upheld the issuance of a building permit by the Austin Building Department to appellee Capitol Mortgage Bankers, Inc.

We reverse the judgment of the trial court and remand the case with instructions to dismiss the case.

Appellants [1] appealed the initial issuance of the building permit by the Austin Building Department to the Board pursuant to Tex.Rev.Civ.Stat.Ann. art. 1011g(d) (Supp. 1981).[2] They contend that the Austin

---

1. Appellant Austin Neighborhoods Council, Inc., is a not-for-profit Texas corporation, which represents various neighborhood associations in the Austin area. Appellant Smoot Carl-Mitchell is the president of this organization. Appellant Larry Deuser is a member of the Austin City Council. Appellee Austin Board of Adjustment is an administrative agency of the city of Austin, which among its other duties hears and decides appeals from the determinations of Austin Building Department officials in their enforcement of the local zoning ordinances. Appellee Capitol Mortgage Bankers, Inc., is the recipient of a building permit

issued to construct a building at the southeast corner of 10th and Congress in downtown Austin. Appellee Rust Properties is a partnership which owns and develops property in Texas.

2. "Appeals to the Board of Adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. Such appeal shall be taken within a reasonable time, as provided by the Rules of the Board, by filing with the officer from whom the appeal is taken and with the Board of Adjustment a notice of appeal specifying the grounds thereof. The officer from

Building Department relied upon an erroneous interpretation of a local zoning ordinance in issuing the permit.[3] The Board, after a hearing at which all parties were permitted an opportunity to present their arguments, unanimously upheld the actions of the Building Department in issuing the permit. The Board, not required by statute nor asked by any party, did not make any findings of fact or conclusions of law.

Appellants, pursuant to §§ (j) of art. 1011g[4], appealed to the district court, from which the court directed a writ of certiorari to the Board pursuant to §§ (k) of art. 1011g[5] and heard the appeal. Appellees Capitol Mortgage Bankers, Inc., and Rust Properties formally intervened in the proceeding before the district court.

At the hearing, the trial court admitted into evidence the rules promulgated by the Board, the record made of the hearing before the Board with all exhibits entered therein, and the zoning ordinances of Austin in which the ordinance whose interpretation is complained of is codified. The trial court refused to admit the additional testimony of appellants' witnesses. This testimony is the basis of their bills of exception. The trial court then affirmed the decision of the Board in issuing the building permit.

Appellants have perfected their appeal to this Court and by five points of error challenge the interpretation of the city zoning ordinance upon which they claim the building permit was issued and the trial court's refusal to hear the additional testimony of the witnesses presented to the hearing.

## I.

At the outset we point out that appellee Capitol Mortgage Bankers, Inc., by cross point of error, challenges appellants' standing to initially bring the appeal to the Board of Adjustment from the Austin Building Department's issuance of the building permit. Art. 1011g(d) states:

Appeals to the Board of Adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. . . . [6]

Appellee Capitol Mortgage Bankers, Inc., unsuccessfully objected at the hearing before the Board and the proceeding before the trial court to appellants' lack of standing to initially bring the appeal. Appellee Capitol Mortgage Bankers, Inc., contended

whom the appeal is taken shall forthwith transmit to the Board all the papers constituting the record upon which the action appealed from was taken."

3. The local ordinance, § 13–2–130, reads in part:
    (a) *General Provisions.*
    Height. No building shall exceed a height of 200 feet on the streetline; provided, that the height of the building may be increased above 200 feet by increasing the height three feet for each foot setback from the streetline.
    Although streetline is never defined in the zoning ordinances, street is defined in § 13–2–1 as "the entire width between the property lines of every public way more than twenty (20) feet wide."
    Setback is defined at § 13–2–1 as:
    the minimum horizontal distance between the front wall of any projection of the building, excluding steps and unenclosed porch and the streetline.

4. "Any person or persons, jointly or severally, aggrieved by any decision of the Board of Adjustment, or any taxpayer, or any officer, department, board, or bureau of the municipality,

may present to a court of record a petition duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within ten (10) days after the filing of the decision in the office of the Board."

5. "Upon presentation of such petition the court may allow a writ of certiorari directed to the Board of Adjustment to review such decision of the Board of Adjustment and shall prescribe therein the time within which a return thereto must be made and served upon the relator's attorney, which shall not be less than ten (10) days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the Board and on due cause shown, grant a restraining order."

6. Art. 1011g(d) is adopted verbatim as § 13 -2 -29(a) in the Austin City Code. § 13 is the section of the city code which includes city's zoning ordinances.

that appellants were neither "persons aggrieved" since they suffered no unique or particular affect to themselves not suffered by the general public, nor were they an "officer, department, board, or bureau of the municipality affected" since their actions were not sanctioned, ratified, or authorized by the City of Austin.

We agree with appellee's contentions. We do not hold that appellants need to show that they suffer a "legal injury" [7] to be "aggrieved" [8] under art. 1011g, but we follow *Scott v. Board of Adjustment*, 405 S.W.2d 55 (Tex.1966) in which the Supreme Court, in interpreting art. 1011g, stated at 56:

[w]here the statute requires that the person be interested, affected, or aggrieved ... the plaintiff must allege and show how he has been injured or damaged other than as a member of the general public. . . .

At no place within the record do the appellants—in the words of the Supreme Court— "show how [they have] been injured or damaged other than as a member of the general public."

■ Article 1011g has two separate sections dealing with standing to appeal. The first is subsection (d), stated above, which pertains to standing to initially appeal the decision of an administrative officer to the Board of Adjustment. In this cause this is the appeal of the Building Department's official's decision to the Board of Adjustment. The second is subsection (j) which pertains to bringing an appeal from the Board of Adjustment to a "court of record." [9] As pointed out above, a person must show "aggrievement" or demonstrate that he is an "officer, department, board, or bureau of the municipality affected" to have standing under subsection (d) to appeal an administrative officer's decision to the Board of Adjustment. But, under subsection (j) the persons and entities listed as capable of appealing are broadened to include "or any taxpayer."

■ It is clear from the face of the statute that the legislature created two distinct hurdles for a party to appeal. Each hurdle must be cleared at the particular point of appeal to which the sub-sections address. Both subsection (d) and subsection (j) remain today as enacted in 1927.[10] The legislature has modified this statute four times since its inception, the last being in 1981.[11] If the legislature had found fault with the statute and its express requirements that a party be aggrieved to initially appeal a decision to the Board of Adjustment, especially in light of the statute's interpretation in *Scott v. Board of Adjustment, supra,* and the long line of cases which expressly follow *Scott,* we presume the legislature would have changed it. We are bound by our judicial function to respect the legislature's clear intent. We are not at liberty to thwart the plain intention of the legislature in enacting constitutional legislation, regardless of the consequences to any party. *Rudman v. Railroad Commission of Texas,* 162 Tex. 579, 349 S.W.2d 717, 721 (1961); *National Surety Corporation v. Ladd,* 131 Tex. 295, 115 S.W.2d 600, 603 (1938); *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920).[12]

---

7. *City of Houston v. Public Utility Commission,* 610 S.W.2d 732 (Tex.1980).

8. This Court has previously defined the term "aggrieved" as a "substantial grievance, a denial of some personal or property right or the imposition of a burden or obligation on a party." *City of Houston v. Public Utility Commission,* 618 S.W.2d 428, 431 (Tex.Civ.App.1981, writ ref'd n.r.e.).

9. Since jurisdiction is not conferred upon any particular court, it follows that under Tex. Const.Ann. art. V, § 8, and Tex.Rev.Civ.Stat. Ann. art. 1909 (1964), the District Court is the proper tribunal in which to bring this action.

*City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67, 70 (1945).

10. Acts 1927, 40th Leg., p. 424, ch. 283, § 7.

11. Acts 1981, 67 Leg., p. 2646, ch. 707, § 4(54); Acts 1971, 62 Leg., p. 2385, ch. 742, § 1; Acts 1961, 57 Leg., p. 687, ch. 322, § 1; Acts 1959, 56th Leg., p. 545, ch. 244, § 1.

12. The Supreme Court in *Simmons* stated,

Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should carefully search out the intendment of the

In viewing subsection (d) in light of the entire statute, the clear intent of the legislature, the requirements imposed by *Scott v. Board of Adjustment, supra,* and the long line of authority following *Scott,* we hold that appellants have failed by willfully refusing to present *any* evidence to show their aggrievement to initially appeal the administrative officer's decision to the Board of Adjustment.

■ Appellants have also failed to show that they are an "officer, department, board, or bureau of the municipality affected." Although appellant Larry Deuser is a member of the Austin City Council, he is before this Court as a private individual and not as a representative of the people of Austin. Appellants contend that the statute does not require them to show that an "officer" is authorized to bring this appeal.[13] We do not agree. Texas law historically provides that a person may act as an "officer of the municipality" only when (1) his acts are within the scope of the authority bestowed upon the person by his office, or (2) when his acts are ratified or adopted by the governing body of the municipality. *Hallman v. City of Pampa,* 147 S.W.2d 543, 546 (Tex.Civ.App.1941, writ ref'd n.r.e.). Deuser meets neither requirement.

■ The Supreme Court has stated, "Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation *NOR ITS OFFICERS CAN DO ANY ACT,* ... not authorized thereby. . . . All acts beyond the scope of powers granted are void." (emphasis added) *Foster v. City of Waco,* 113 Tex. 352, 255 S.W. 1104, 1106 (Tex.1923). Article II, § 4 of the Austin City Charter provides, "(a)ll powers and authority which are expressly or impliedly conferred on or possessed by the city shall be vested in and exercised by the council." It appears the city charter confers authority upon the council as a whole and not singularly on its members. This is in accord with the general rule of law that the governing authorities of cities can express themselves and represent the city only by acting in concert in a meeting duly organized.[14]

Article V, § 6 of the Austin City Charter provides, "There shall be a department of law, the head of which shall be the city attorney . . . The city attorney SHALL be the legal advisor of, and attorney for, ALL of the officers and departments of the city, and HE SHALL REPRESENT THE CITY IN ALL LITIGATION AND LEGAL PROCEEDINGS . . . ." (emphasis added) As such, we find no authority to be bestowed upon Deuser's office of councilman to file independent actions challenging the actions of any agency of municipal government. Deuser has not shown, and we are unaware of, any adoption or ratification of his actions by the city council in bringing this appeal. Such an affirmative act by the governing body of the city is required. *City of Dallas v. Malloy,* 214 S.W.2d 154, 156 (Tex.Civ.App.1948, writ dism'd). Since the

statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the lawmaking body. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced, nor strained, but simply such law as the words of the law in their plain sense fairly sanction and will clearly sustain.

13. Deuser is bringing this appeal (at least in part if not entirely) from an interpretation given by the City Attorney's office of § 13-2-130. The city code at § 2-3-2 expressly allows city personnel and agencies to request legal opinions from the City Attorney's office on any subject germane to their work. The City Attorney's office gave a legal opinion which directly supports the interpretation made by the Build-

ing Department and the Board of Adjustment. The evidence presented to the Board shows that this interpretation has been employed by the city since the ordinance's inception almost fifty years ago. The record also shows that other buildings have been built by use of this interpretation.

14. *Webster v. Texas & Pacific Motor Transport Co.,* 140 Tex. 131, 166 S.W.2d 75, 76–77 (1942); *Stirman v. City of Tyler,* 443 S.W.2d 354 (Tex. Civ.App.1969, writ ref'd n.r.e.); *First National Bank of Marlin v. Dupuy,* 133 S.W.2d 238 (Tex. Civ.App.1939, dism. judgm. cor.); *McAllister v. City of Frost,* 131 S.W.2d 975, 977 (Tex.Civ. App.1939, writ dism'd jdgmt cor.); *City of Floydada v. Gilliam,* 111 S.W.2d 761, 764 (Tex. Civ.App.1937, no writ).

city council's actions are valid only when they sit as a body, we must view the minutes of the meetings of the council to discern its actions. *Wagner v. Porter,* 56 S.W. 560 (Tex.Civ.App.1900, no writ). No minutes are within the record before us. Therefore, we presume that the City of Austin through its governing body has either failed or refused to ratify the actions of Deuser in bringing this appeal. To allow every councilman to challenge every and any action of a municipal agency would destroy the functions of and the balances of municipal government.

Appellee Capitol Mortgage Bankers, Inc., has raised its objection to appellants' standing at every stage of this cause. They have done so by written motion and by oral argument. Appellants reply that appellee has waived its objection by failing to object by a pleading formally labelled a plea in abatement. Appellee objected to the Board, an agency of municipal government not bound by the Rules of Civil Procedure, by a written pleading labelled "Objections to Appeal."[15] Appellee objected to the trial court by a separate paragraph in their "Petition to Intervene."[16] Both objections were expressly overruled.

In *Texas Industrial Traffic League v. Railroad Commission of Texas,* 633 S.W.2d 821 (Tex.1982) the Supreme Court stated (at 823), "A party's lack of justiciable interest must be pointed out to the trial court (or the district court sitting as an appellate court) in a written plea in abatement, and a ruling thereon must be obtained or the matter is waived."[17]

■ It is a primary rule of pleading in Texas that a written pleading is to be judged by its substance and not by its label affixed by its draftsman. The pleading's substance is to be determined by what effect the pleading will have on the proceeding if granted by the trial court. Tex.R. Civ.P.Ann. 71 (1979); *Bryan v. General Electric Credit Corporation,* 553 S.W.2d 415 (Tex.Civ.App.1977, no writ); *Mercer v. Band,* 454 S.W.2d 833 (Tex.Civ.App.1970, no writ); *Smith v. City of Dallas,* 404 S.W.2d 839 (Tex.Civ.App.1966, no writ); *Iowa Mutual Insurance Co. v. Burmester,* 313 S.W.2d 897 (Tex.Civ.App.1958, no writ); *Armstrong v. Snapp,* 186 S.W.2d 380 (Tex.Civ. App.1945, no writ); *Custer v. McGough,* 184 S.W.2d 668 (Tex.Civ.App.1944, no writ). This is also true regarding a plea in abatement. *Bryce v. Corpus Christi Area, ETC.,* 569 S.W.2d 496 (Tex.Civ.App.1978, writ ref'd n.r.e.).

■ Although a plea in abatement is strictly construed as to its effects, pleadings are liberally construed "as to do substantial justice" in determining their character. Although appellee did not formally label their motion a plea in abatement, we believe the substance of the pleading—the effect of it if granted—is in essence that contemplated

---

**15.** Appellee's paragraph I. of their "Objection to Appeal" states,

> Appellants are not "persons aggrieved" or an "officer, department, board of the city affected by any decision of the Building Inspector" as required by Section 45.11 of the Zoning Code of the City of Austin. Therefore, appellants have no standing to bring this appeal.

This referenced section is in essence the same requirements dictated by art. 1011g(d). Appellants can claim no surprise in their failure to present *any* evidence as to their standing.

**16.** Appellee's paragraph II of their "Petition to Intervene" stated,

> Plaintiffs lack standing to file this appeal with the Board of Adjustment for the City of Austin pursuant to Article 1011g, Tex.Ann. Statutes, and the applicable ordinances of the city of Austin and rules of the Board of Adjustment.

**17.** Interestingly enough in *Sabine River Authority of Texas v. Willis,* 369 S.W.2d 348 (Tex. 1963), which was employed by the Supreme Court in *Texas Industrial Traffic League* as authority for their demand that a plea in abatement is the method in which a party's standing is questioned and preserved, *Sabine* listed pleas to the jurisdiction of the court and pleas to the improper joinder of parties to the lawsuit as well as the plea in abatement as the means of questioning a party's justiciable interest in a cause of action.

Historically, "Any matter of fact arising outside the face of the petition, which challenges neither the venue of the action *nor the jurisdiction of the court,* but which presents a reason why the pending suit should be suspended or dismissed, may form the subject of a plea in abatement." McDonald, Texas Civil Practice, Volume II, 159 (1982).

by the plea in abatement requirement of *Texas Industrial Traffic League.* In *Texas Industrial Traffic League* it must be remembered that no plea of any type mentioning the party's lack of standing was ever filed. In this cause appellee made an objection at every stage of the proceeding and appellants willfully chose not to offer *any* evidence of their aggrievement. Appellants can claim no surprise.

As such, we hold that appellee has not waived its objection to appellants' lack of standing to initially bring the appeal from the Austin Building Department's decision to the Austin Board of Adjustment under art. 1011g(d). This error being preserved below and presented to this Court by cross point of error is recognized and appellee's cross point is sustained. *Hooks v. Texas Department of Water Resources,* 611 S.W.2d 417, 419 (Tex.1981).

 We are of the opinion that in this era when agencies are besieged with innumerable complaints by innumerable parties, the agencies, when empowered by statute, should demand a party to show his standing to bring the complaint. This is not to deny any party any substantive right of access to the agency, but it merely guarantees the efficient opportunity of exercising the right. In this appeal, even though appellants' standing was questioned, and the statute, as interpreted by the Courts of this State, expressly required "aggrievement," the agency did not require the parties to prove how they were "injured or damaged other than as member of the general public." Despite the fact that the agency did not require the appellants to show their standing, the appellants should have presented evidence to bring themselves within the provisions of art. 1011g(d). An agency can not waive what the legislature has demanded.[18]

We, therefore, reverse the judgment of the trial court and remand the cause with instructions that it be dismissed.

---

.18. Appellants' standing must be affirmatively shown to initially appeal to the Board of Adjustment, despite the fact that they arguably have standing as taxpayers to appeal by writ of certiorari to the "court of record." One possible theory for the legislatures broadening and liberalizing the standing requirement before the court, is that the court has the discretionary power to refuse the writ of certiorari, unlike the appeal under the Texas A.P.A. It would appear that the legislature gave with one hand—broadening the standing requirement—while taking away with the other—giving the court the discretionary power to hear the appeal by writ of certiorari.

It must be remembered that the standing requirements are as different as the functions served by the Board and the Court. Simply because a party might—and appellants have offered no proof that they are even taxpayers—have standing before the court under subsection (j), this does not grant them standing before the Board. The function of the court is merely to judge the legality of the Board's order. The Board is authorized to weigh the facts and apply the law to further the policy of the local municipality. The court does not and may not substitute its judgment for that of the Board's. *City of San Angelo v. Boehme Bakery, supra,* 190 S.W.2d at 70–71.