**TEXAS INDUSTRIAL TRAFFIC LEAGUE, et al., Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS, et al., Appellees.**

**No. 13380.**

Court of Appeals of Texas, Austin.

May 9, 1984.

Deborah A. Chadbourne, Irving, Steven J. Kalish, Balnap, McCarthy, Spencer, Sweeney & Harkaway, Washington, for appellants.

Jim Mattox, Atty. Gen., Phyllis B. Schunck, Asst. Atty. Gen., John R. Whisenhunt, Robinson, Felts, Starnes & Latting, Austin, for appellees.

Before SHANNON, POWERS and GAMMAGE, JJ.

## ON MOTION FOR REHEARING

POWERS, Justice.

We withdraw our opinion of September 7, 1983 and substitute the following.

Appellants are three organizations: the Texas Industrial Traffic League, National Small Shipments Traffic Conference, and Drug and Toilet Preparation Conference.

Appellees are the Texas Railroad Commission and a corporation named Common Carrier Motor Freight Association, Inc. (CCMFA). This being our second decision in the appeal, we shall briefly outline the procedural history of the case.

The Commission fixes the rates, fares, and charges permitted to be assessed by motor carriers for their intrastate service. Tex.Rev.Civ.Stat.Ann. art. 911b, § 4(a), (d) (1964). In behalf of two categories of carriers, CCMFA applied to the Commission for an increase in the rates permitted to be charged by the carriers on their intrastate shipments. Appellants appeared in the agency proceeding and opposed the rate increase sought by CCMFA. After hearing, the Commission granted the application with respect to one category of carrier and denied it as to the other, ordering that certain tariff rates be amended accordingly.

Appellants sued in district court for judicial review and appealed from that court's judgment affirming the Commission's final order. Tex.Rev.Civ.Stat.Ann. art. .911b, § 20 (1964). By way of cross-point in that appeal, CCMFA contended that appellants lacked "standing" to maintain the statutory cause of action granted by art. 911b, § 20 and that this Court, in consequence, lacked jurisdiction to decide their appeal. We sustained the cross-point and reversed the judgment of the district court. 628 S.W.2d 187 (Tex.App.1982). We remanded the cause in the interest of justice, however, in order that appellants might have an opportunity to prove the minimum facts essential to establish subject-matter jurisdiction under art. 911b, § 20, there being no presumption of jurisdiction in such special causes of action created by statute and in derogation of the common law. *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1089 (1926).

The Supreme Court of Texas reversed our judgment, holding that "[f]ailure of the party bringing suit to show a justiciable interest in the controversy is not a matter of fundamental error," and may therefore be waived, and that "[t]he issue of standing was therefore waived" by CCMFA because it failed to raise the issue of "standing" by a "plea in abatement" filed in the district court. 633 S.W.2d 821, 823 (Tex.1982). *Cf., Mingus v. Wadley, supra; California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780, 781–83 (1960). Accordingly, we were instructed to determine the appeal "on the merits."

Our jurisdiction having been thus declared, we now affirm the judgment of the district court.

The Commission calculated the carriers' revenue requirements on the basis of an "operating ratio" of 90%—an assumption by the agency that the carriers' operating expenses from intrastate shipments, exclusive of interest and income taxes, would be 90% of the revenue derived by them from such shipments. Contending that the Commission should rather have estimated the carriers' revenue requirements by applying a rate of return to the capital contributed by the carriers' shareholders, appellants charge in their first and second points of error that the Commission's utilization of the "operating ratio" was (1) arbitrary and capricious and (2) not supported by substantial evidence, two grounds for reversal and remand of an agency decision specified in Tex.Rev.Civ.Stat.Ann. art. 6252–13a, Administrative Procedure and Texas Register Act (APTRA), §§ 19(e)(5), (6) (Supp.1982) for instances where the law *authorizes* review under the substantial evidence rule, or where the law *does not define* the scope of judicial review. Appellees rejoin that a reviewing court may not invalidate the Commission's rate order on the ground that the Commission employed an improper *method* in its ratemaking, but may do so only on the statutory basis that the *resulting* rates are *unreasonable* or *unjust* as they were finally *fixed* by the agency, the standard for judicial review specified by the applicable constitutive statute—Tex.Rev.Civ.Stat. Ann. art. 911b, § 20. *See Railroad Commission of Texas v. Houston Natural Gas Corporation*, 155 Tex. 502, 289 S.W.2d 559, 573 (1956) (the *Alvin* case); *Railroad Commission of Texas v. Galveston Chamber of*

*Commerce,* 105 Tex. 101, 145 S.W. 573, 580 (1912).

The provisions of APTRA § 19(e)(5) and (6), the grounds for reversal invoked by appellants, are applicable to the case *only if* "the law under which review is sought.... authorizes review under the substantial evidence rule, or ... does not define the scope of judicial review, ...." APTRA § 19(e). We hold that the law under which review is sought does *not* authorize review under the substantial evidence rule; and, we hold that such law *does,* indeed, define the scope of judicial review—specifically, it provides that the judicial review of the rate orders of the Commission shall be by trial de novo in the district court of Travis County, wherein the plaintiff is required to show by a *preponderance* of the evidence that the rates challenged by him are unreasonable and unjust to him, such actions to be "tried and determined as other civil causes in said court." Tex.Rev.Civ.Stat.Ann. art. 911b, § 20 (1964). Accordingly, we may not reverse the Commission's final order on the *only* grounds raised in appellants' first two points of error.

Our holdings in this regard are not reached lightly—they are, in fact, compelled by decisions of the Supreme Court of Texas that we may not conveniently and discreetly disregard. We are as fully and acutely aware as anyone of the inconvenience of trials de novo as a means of reviewing the final orders of administrative agencies, but that is the nature of the review plainly specified by art. 911b, § 20; and in construing statutory language that is almost identical, the Supreme Court of Texas has held trial de novo, based on evidence taken in the district court, to be the requisite manner of judicial review in other rate cases. These decisions by our highest court, both preceding and following the enactment of APTRA, have never been overruled. To these matters we now turn.

### THE APPLICABLE STATUTORY PROVISIONS

Article 911b, § 20 provides as follows:

If any motor carrier or other party at interest be dissatisfied with any decision, rate, charge, rule, order, act, or regulation adopted by the Commission, such dissatisfied ... party after failing to get relief from the Commission may file a petition setting forth the particular objection to such decision, rate, charge, rule, order, act or regulations ... in the District Court in Travis County, Texas, against said Commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature and *shall be tried and determined as other civil causes in said court.* Either party to said action may appeal to the Appellate Court having jurisdiction of said cause .... In all trials under this section the burden of proof shall rest upon plaintiff, *who must show by the preponderance of evidence that the decisions, rates, regulations, rules, orders, classifications, acts or charges complained of are unreasonable and unjust to it or them.* [emphasis added]

The pertinent parts of APTRA read as follows:

Section 1. It is declared the public policy of this state to afford minimum standards of uniform practice and procedures for state agencies, ... and *to restate the law of judicial review of agency action.*

\*　\*　\*　\*　\*　\*

Sec. 3. As used in this Act:

\*　\*　\*　\*　\*　\*

(2) "Contested case" means a proceeding, including but not restricted to rate-making and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for adjudicative hearing.

\*　\*　\*　\*　\*　\*

Sec. 19. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Act. This section is cumulative of other means of redress provided by statute.

(b) Proceedings for review are instituted by filing a petition ....

(3) [T]he filing of a petition vacates an agency decision for which trial de novo is the manner of review authorized by law, but does not affect the enforcement of an agency decision for which another manner of review is authorized.

\* \* \* \* \* \*

(c) *If the manner of review authorized by law for the decision complained of is by trial de novo, the reviewing court shall try all issues of fact and law in the manner applicable to other civil suits in this state* but may not admit in evidence the fact of prior agency action or the nature of that action (except to the limited extent necessary to show compliance with statutory provisions which vest jurisdiction in the court). Any party to a trial de novo review may have, on demand, a jury determination of all issues of fact on which such a determination could be had in other civil suits in this state.

(d) *If the manner of review authorized by law for the decision complained of is other than by trial de novo:*

\* \* \* \* \* \*

(3) the review is conducted by the court sitting without a jury and is confined to the record, except that the court may receive evidence of procedural irregularities alleged to have occurred before the agency but which are not reflected in the record.

(e) *The scope of judicial review of agency decisions is as provided by the law under which review is sought. Where the law authorizes appeal by trial de novo, the courts shall try the case in the manner applicable to other civil suits in this state* and as though there had been no intervening agency action or decision. Where the law authorizes review under the substantial evidence rule, or where the law does not define the scope of judicial review, the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion but may affirm the decision of the agency in whole or in part and shall reverse or remand the case for further proceedings if substantial rights of the applicant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

\* \* \* \* \* \*

(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. [emphasis added].

## PRE–APTRA DECISIONS BY THE SUPREME COURT OF TEXAS

1. The Scope of Review: Substantial Evidence or Preponderance of the Evidence Standard?

We find that in two pre-APTRA decisions the Supreme Court of Texas, despite the literal meaning of art. 911b, § 20, applied the "substantial evidence rule," *as it was then understood,*[1] in suits for judicial review brought against the Commission by authority of art. 911b, § 20; however, neither involved an exercise of the agency's ratemaking power. *Auto Convoy Co. v. Railroad Commission of Texas,* 507 S.W.2d 718, 722 (Tex.1974); *Alamo Express v. Union City Transfer,* 158 Tex. 234, 309 S.W.2d 815, 823–24 (1958). In *Railroad Commission of Texas v. Continental Bus Sys.,* 616 S.W.2d 179, 181 (Tex. 1981), decided by the Court after the effective date of APTRA, but involving a Commission order unrelated to ratemaking, is-

---

**1.** Before the enactment of APTRA, where the *scope* of review was governed by the substantial evidence rule, the *manner* of review was still generally *de novo,* that is, review was based on evidence taken in the district court. APTRA § 19(d)(3) provides that when the *manner* of review authorized by law is other than by trial de novo, review is confined to the agency record.

sued before the effective date of APTRA, the Court stated broadly that "[t]he substantial evidence rule is the standard for judicial review of administrative orders" under art. 911b, § 20. One recent decision by a court of appeals *has* applied the "substantial evidence rule" to proceedings under art. 911b, § 20 in a case involving the Commission's post-APTRA exercise of its ratemaking power, doing so on the assumption that the rule is applicable in such proceedings. *Railroad Commission of Texas v. Southern Pacific,* 649 S.W.2d 713 (Tex. App.1983, no writ).

▮ In stark contrast, however, the "substantial evidence rule" has been expressly held in pre-APTRA decisions to be *inapplicable* in suits for judicial review of the Commission's exercise of its *ratemaking* power, brought under authority of stat-

utes *virtually identical* in their terms to art. 911b, § 20. *Lone Star Gas Co. v. State,* 137 Tex. 279, 153 S.W.2d 681, 691 (1941) ("In rate cases involving the charge of confiscation, or unreasonableness and unjustness, ... [Tex.Rev.Civ.Stat.Ann. art. 6059 (1962)] contemplates a de novo trial."); *Texas & New Orleans Railroad Co. v. Railroad Commission of Texas,* 155 Tex. 323, 286 S.W.2d 112, 123 (1955) (holding that Tex.Rev.Civ.Stat.Ann. arts. 6453 and 6454 (1926) require a de novo trial in a suit by railroads attacking a Commission order reducing intrastate freight rates for the transport of sugar, and that the railroads were required to prove by a preponderance of the evidence that the reduced rates were unjust and unreasonable as to them, the substantial evidence rule being expressly held to be inapplicable).[2] These

**2.** The cases applying the substantial evidence rule in proceedings under art. 911b, § 20, in judicial review of Commission orders *other* than ratemaking orders, are *not* inconsistent with *Lone Star Gas.* This is because the Court in *Lone Star Gas* expressly held that the substantial evidence rule *was* applicable to "appeals from matters of purely administrative decision" such as "whether a public necessity or convenience exists for bus or truck operation," *as distinguished from* "questions of whether a rate is ... unreasonableness or unjust." 153 S.W.2d at 686. *See also id.* at 691.

The Supreme Court emphasized the distinctions between judicial review of rate orders and judicial review of other orders in *Southern Canal Co. v. State Board of Water Eng.,* 159 Tex. 227, 318 S.W.2d 619, 624 (1958). In that case, the Court invalidated statutory provisions authorizing judicial review of the "reasonableness" of *non-rate* orders of the Board of Water Engineers by trial de novo and under the preponderance of the evidence standard, even though the Court *had* applied such a review to *rate* orders. The Court stated:

> For many years rate cases have been treated by our courts as occupying a special category. They stand alone in the respect discussed. We decline to extend the holding in rate cases to appeals from orders of administrative agencies in other fields of law where the Legislature directs a trial of the reasonableness of the orders.

The Commission urgently asserts that the holdings of this Court are contrary to this Court's decision in *Railroad Commission of Texas v. Merchants Fast Motor Lines,* 545 S.W.2d 198 (Tex.Civ.App.1976), rev'd, 573 S.W.2d 502 (Tex. 1978). In that case a carrier filed an application seeking to amend its certificate of conve-

nience and necessity to eliminate restrictions concerning the weight of the packages and shipments which it could carry and the rates which it could charge. The Commission granted part of the requested relief, enlarging the carrier's authority and prescribing certain new rate schedules. The district court set aside the order, partly because the carrier had not filed the application required by Commission rules for a change in rates, and notice or hearing had not been afforded to persons interested in the rate change. This Court agreed that the notice requirements of agency rules had been violated. This Court reversed the district court's judgment, however, on the ground that the district court should have remanded the proceedings to the Commission under APTRA § 19(e) rather than merely setting aside the order. This Court held that remand under APTRA § 19(e) was appropriate even though APTRA became effective after the date of the Commission order and after the date of hearings in the district court, because this procedural remedy did not impair any vested rights of the litigants.

The APTRA § 19(e) provisions for remand are applicable *only* when "the law authorizes review under the substantial evidence rule, or where the law does not define the scope of judicial review, ...." The Commission concludes from this that this Court implicitly held in *Merchants* that judicial review of Commission motor carrier rate orders is governed by the substantial evidence rule. We disagree. This Court in that case simply assumed that the remand provisions of § 19(e) were applicable to judicial review of the order in question, without explaining why. This Court did not expressly address the question whether motor carrier rate orders are reviewable under the substantial evidence rule.

decisions clearly draw a marked distinction between the judicial review of rate orders and other orders; and they are highly persuasive in arriving at the proper construction to be given art. 911b, § 20. *Evans v. American Pub. Co.*, 118 Tex. 433, 13 S.W.2d 358, 362 (1929). They require that art. 911b, § 20 be construed to mean precisely what it says, namely that a plaintiff who challenges a rate order has the burden to prove by a *preponderance of the evidence* that the Commission's rates are unreasonable and unjust as to him. These Supreme Court decisions have never been overruled. The doctrine of *stare decisis* is a principle of our legal system applied with particular force in matters of statutory construction. *James v. Vernon Calhoun Packing Co.*, 498 S.W.2d 160, 162–63 (Tex. 1973). We see no rational basis for construing art. 911b, § 20 differently from the Supreme Court's construction of the almost-identical statutory language found in Tex.Rev.Civ.Stat.Ann. arts. 6059, 6453–54 (1962 & 1926).

 The Supreme Court of Texas, in construing statutes virtually identical to art. 911b, § 20, authorizing judicial review of rates set by the Commission for railroads, had developed several legal principles applicable in such review, starting with the premise that ratemaking is a legislative function that may not be exercised by the courts; consequently, the reviewing court may not, for want of the power to do so, *establish* in the case a rate deemed reasonable by the court. *Railroad Commission of Texas v. Weld & Neville*, 96

Tex. 394, 73 S.W. 529, 531 (1903). In its review under the applicable statutes, however, a court may determine *whether* the Commission had failed to comply with the law, that is, whether the Commission had established rates that were unjust or unreasonable. *Id.; Gulf, C. & S.F. Ry. Co. v. American Sugar Refining Co.*, 130 S.W.2d 1030 (Tex.Civ.App.1939, writ ref'd); *Railroad Commission v. Galveston Chamber of Commerce, supra.* The scope of review authorized by the statutes does not, in any event, encompass an investigation of the methods or criteria adopted by the Commission in fixing the rates it did, nor allow any inquiry into the motives or purposes with which the agency acted. *Railroad Commission of Texas v. Weld & Neville, supra* at 534; *Railroad Commission of Texas v. Galveston Chamber of Commerce, supra; Railroad Commission of Texas v. Houston Natural Gas Corp., supra.* These decisions have never been overruled.

2. The Manner of Review: De Novo or Confined to the Agency Record?

 While in the present case we are concerned primarily with the *scope* of review of Commission motor carrier rate orders under art. 911b, § 20, the scope of review *is* bound up with the *manner* of review. As noted above, the decisions in *Lone Star Gas* and *Texas & New Orleans Railroad Co.* held that review of Commission gas utility and railroad rate orders is by trial de novo, that is, a trial based on evidence taken before the reviewing court

The reasonableness of a rate was not in issue, but only the sufficiency of the notice and hearing preceding the order changing the rates. Moreover, *assuming* that APTRA was applicable, remand was appropriate under § 19(e) because the Commission's order enlarging the carrier's authority *was* reviewable under the substantial evidence rule.

The Supreme Court reversed this Court's judgment in *Merchants,* doing so on the ground that the Legislature did not intend to require judicial review of agency orders, entered before the effective date of APTRA, to be under the judicial review provisions of APTRA. Accordingly, the APTRA § 19(e) provisions for remand were inapplicable, and therefore the district court had authority only to set aside the order. In deter-

mining the issue whether the Legislature intended retrospective application of the judicial-review provisions of APTRA, the court noted that APTRA required that judicial review be confined to the agency record where the manner of review authorized by law was other than by trial de novo. APTRA § 19(d)(3); 573 S.W.2d at 506. However, there is absolutely nothing in the Court's opinion to indicate that the Court thought that judicial review of motor carrier rate orders was to be confined to the agency record or governed by the substantial evidence rule. The Court quite simply was not faced with and did not address this issue, but only the issue whether agency orders made before the effective date of APTRA could be reviewed under the judicial review provisions of APTRA.

as opposed to the court's reviewing a record compiled in the Commission. This is in accord with the language of art. 911b, § 20 providing that suits brought thereunder shall "be tried and determined as other civil causes...." Moreover, the "preponderance of the evidence" standard specified by art. 911b, § 20, referring both to the manner and scope of review, implies strongly that the manner of review is by trial de novo because of the obvious difficulty inherent in any attempt to determine facts "by a preponderance of the evidence" when review is based upon the agency record alone. *Southwestern Bell Tel. v. Public Utility Commission*, 571 S.W.2d 503, 510–11 (Tex.1978).

We conclude, therefore, that art. 911b, § 20, by its plain and unequivocal terms, requires judicial review of the Commission's rate orders to be by trial de novo, aimed at determining by a preponderance of the evidence whether the Commission's rate is unreasonable or unjust to the plaintiff; and that the statute allows no inquiry into the validity of the ratemaking method employed by the Commission. So much is plain on the face of art. 911b, § 20.

## POST–APTRA DECISIONS BY THE SUPREME COURT OF TEXAS

Did the enactment of APTRA destroy the controlling force of the foregoing decisions of the Supreme Court of Texas and alter the plain meaning of art. 911b, § 20? While APTRA expressly attempts to accommodate, "restate," and preserve those decisions as part of "the law under which review is sought," there is no doubt that their continued vitality has been called into question, owing to certain broad language found in the opinions of the Supreme Court of Texas in *Southwestern Bell Tel. Co. v. Public Utility Commission, supra,* and *Railroad Commission of Texas v. Entex, Inc.,* 599 S.W.2d 292 (Tex.1980).

In *Southwestern Bell Tel. v. Public Utility Commission, supra,* Bell sued for judicial review of a telephone rate order, a suit authorized by § 69 of the Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat. Ann. art. 1446c (1980). That statute provides in part as follows:

[a]ny party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule. The issue of confiscation shall be determined by a preponderance of the evidence.

Bell contended that its claim of "confiscation," resulting from the establishment of rates that would not permit recovery of its costs, should be tried de novo in the district court, thereby allowing it to introduce in court new evidence pertaining to the establishment of telephone rates. Bell's contention rested, of course, on the ground that the "manner of review authorized by law," that is, by PURA § 69, was by trial de novo with respect to the issue of "confiscation." The Supreme Court disagreed for several reasons:

1. The Public Utility Regulatory Act was enacted *after* APTRA, and if the Legislature had intended by PURA § 69 to authorize judicial review by a "trial de novo," it would have done so in clearer terms. 571 S.W.2d at 508.

2. Section 19 of APTRA provides for only two "types" of judicial review of administrative action, namely "pure" trial de novo and substantial-evidence review based solely on the agency record; and § 19 of APTRA does not sanction the manner of judicial review previously employed in rate cases, which was "akin to the pure trial de novo review except that it was said that the [agency] decision was admissible in evidence at trial." *Id.* at 507, 508–09.

3. If one considers that the Legislature intended a de novo review for "confiscation" claims, then the resulting interpretation of PURA § 69 would render practically meaningless the volumes of testimony and exhibits developed in the administrative hearings—proceedings conducted under APTRA with procedural safeguards that have largely eliminated the need for de novo review. *Id.*

4. Any new evidence which Bell might introduce on judicial review to establish its "confiscation" claim would be impossible to

coordinate and evaluate in reference to the evidence compiled in the agency proceedings and the issues determinable therefrom, to which the "substantial evidence rule" applied; moreover, APTRA § 19(d)(2) provides an adequate opportunity for one to present evidence before the agency after remand. *Id.* at 509.

5. Trial de novo is not required as a check on administrative abuses because in such trials review simply does not encompass an examination of the proceedings in the agency, which, in contrast, *is* the nature of judicial review under the substantial evidence rule. *Id.*

6. The decisions in *Lone Star Gas Co. v. State, supra,* and *Texas & New Orleans Railroad Co. v. Railroad Commission of Texas, supra,* do not control to dictate the requirement of a trial de novo under PURA § 69, owing to the fact that the statutes providing judicial review in those cases "differ substantially from" PURA § 69. *Id.* The substantial differences between the statutes, are of course, that arts. 6059 and 6453–54, and 911b, § 20, all place a burden on the plaintiff to prove that the rates are "unreasonable or unjust to it or them," art. 6059 "by clear and satisfactory evidence" art. 911b § 20 "by the preponderance of the evidence," and make no reference to the substantial evidence rule except with respect to the issue of confiscation.

7. The Legislature defined ratemaking as a "contested case" in APTRA § 3(2), and "contested cases" are "characterized by the full range of procedural safeguards" of APTRA §§ 13–19. After such proceedings, "[i]t is the duty of the courts, then, to review [the agency's determination of the reasonableness of its rates] and this can best be accomplished by examining the record of proceedings before the Commission." Through the adoption of APTRA and PURA the Legislature has "substitute[d] an adequate legal remedy for the equitable power of the court to review a rate order on the constitutional ground of confiscation." *Id.* at 510.

Concluding, the Court in the *Bell* case held at 570 that the manner of review authorized by PURA § 69 is *"other than* trial de novo" (emphasis added); and therefore, under APTRA § 19(d), such review was required to be conducted by the court sitting without a jury and based solely upon the administrative record. *Id.* The Court held at 512, in addition, that the second sentence of PURA § 69 was "inoperative and void" on the ground that it "transgressed constitutional safeguards and requirements" because, if enforced as written, it would result in an unworkable commingling, in a single suit, of the two inconsistent standards for judicial review of administrative agency actions. Again referring to its earlier decision in *Lone Star Gas Co. v. State, supra,* the Court emphasized that its decision in *Lone Star Gas* did not have the result of commingling in a single suit the two inconsistent standards for judicial review; rather, the Court had held in that case only that art. 6059 required de novo review. *Id.* at 512.

In *Railroad Commission of Texas v. Entex, Inc., supra,* the Supreme Court of Texas again reviewed a rate order issued under PURA, doing so in a suit brought by a gas company wherein it contended that the rate of return fixed by the Texas Railroad Commission was unreasonable. The district court agreed that the rate was unreasonable as promulgated. The company urged the correctness of the Commission's end-result determination. The Supreme Court of Texas responded to the contention by stating broadly:

> Texas law no longer provides for a trial de novo review of rate cases or for an "end-result" test as in the *Alvin* case. After the passage of [APTRA], the standard for judicial review of the Commission's orders is the substantial evidence rule. The court may reverse or remand the Commission's decision if it is not reasonably supported by substantial evidence on the agency record, or if it is apparent that the agency action was arbitrary or an abuse of discretion. *Southwestern Bell Tel. v. Public Utility*

*Comm.,* 571 S.W.2d 503 . . . . [599 S.W.2d at 298].

▮ Shall we then give effect to the apparent universality of the foregoing language from *Entex,* which appears to state that *any* rate order issued by *any* administrative agency is subject to judicial review solely under the "substantial evidence rule," and appears to declare void *all* statutory provisions for judicial review of rate orders by trial de novo? If so, we may in the present case include in our review the question of whether the Commission employed an invalid method for ratemaking, as appellants contend we should.

We cannot so hold. In *Bell* the Court held *only* that the *manner* of review authorized by *PURA § 69* was "other than trial de novo." The Court so held because PURA § 69 was enacted *after* APTRA, and *if* the Legislature had intended to provide for trial de novo review of rate orders, under PURA § 69 and APTRA § 19(c), it would have done so in clearer language. This rationale, of course, *does not apply* to art. 911b, § 20, which was enacted long *before* APTRA. Moreover, in *Bell* the utility argued that it was entitled to trial *de novo,* citing *Lone Star Gas* and *Texas & New Orleans Railroad Co.* The Supreme Court *could* have disposed of these earlier cases on the ground that the manner of review of rate orders authorized by art. 6059, 6453–54 was "other than trial de novo" and would henceforth be governed by APTRA § 19(d). *The Court did not do so.* Instead, the Court *distinguished* these cases on the ground that these statutes were substantially different from PURA § 69, in that they quite explicitly call for trial de novo. *One must therefore conclude that the Supreme Court believed that APTRA by itself did not operate to abrogate the manner of review called for by those cases.*

Our interpretation, is, of course, consistent with the express terms of APTRA. APTRA § 1 provides that one of the purposes of APTRA is "to *restate* the law of judicial review of agency action." (emphasis added). APTRA § 19(b), (c), (e) all pro-vide that when the manner of review authorized by law is by trial *de novo,* the review should be conducted in accordance with the rules previously applied in such trials: "the filing of the petition vacates [the] agency decision"; "the reviewing court shall try all issues of fact and law in the manner applicable to other civil suits in this state but may not admit in evidence the fact of prior agency action or the nature of that action"; etc. On the other hand, APTRA § 19(d) provides that when the manner of review authorized by law is *other* than by trial de novo, the review is based on the agency record. Finally, APTRA § 19(e) provides that "[t]he scope of judicial review of agency decisions is as provided by the law under which review is sought." This statutory language makes it rather clear that AP-TRA was intended to *preserve* the fundamental manner of judicial review as it existed before and independent of the enactment of APTRA, whether that manner of review was: (a) a "pure" trial de novo based solely upon evidence adduced in the reviewing court, the evidentiary record compiled in the agency, and its decision, being inadmissible; or (b) "substantial evidence" review based solely upon the evidentiary record compiled in the agency. In *Bell,* the Supreme Court held that only these forms of judicial review are permitted by APTRA § 19. Therefore, in judicial review of motor carrier *rate* orders; courts may no longer apply the "modified" de novo manner of review previously applied in review of such orders. However, in light of the evidence purpose of APTRA to preserve the *fundamental* manner of judicial review as it existed before APTRA, we must hold that "the manner of review authorized by law for [motor-carrier-rate orders] is by trial de novo," because under art. 911b, § 20, as interpreted in the *Lone Star Gas* and *Texas & N.O.R.R.* cases, that review is based on evidence adduced *in the district court.* We will not extend the Supreme Court's opinions and holdings in *Bell* and *Entex* to abrogate the fundamental manner of review called for by those cases. It is the province of the Supreme Court or the Legislature to make that ex-

tension, and not an intermediate appellate court.

## CONCLUSIONS

We have concluded that the "manner of review authorized by law" for the Commission's motor-carrier rate orders is by trial de novo. The plain language of art. 911b, § 20 and APTRA § 19(c), (e) mandates our conclusion. APTRA § 19(c) provides that when the manner of review authorized by law is by trial de novo, "the reviewing court shall try all issues of fact and law in the manner applicable to other civil suits in this State...." This language is strikingly similar to the provision of art. 911b § 20 that actions under that section "shall be tried and determined as other civil causes in said court." The essence of trial de novo is that review is based on evidence introduced in district court, as in "other civil suits." Of course, APTRA § 19(e) provides that the agency record is inadmissible in the district court, while the record was admissible in review of rate orders under *Lone Star Gas, supra,* and *Texas & New Orleans Railroad Co., supra.* This, however, does not alter the fact that the "manner of review authorized by law," that is, by art. 911b, § 20, is trial de novo.

Even if we err in our holding that "pure" trial de novo is the *manner* of review required by law for motor carrier rate orders issued by the Commission, the fact remains that the "scope of judicial review provided by the law under which review is sought" is the preponderance-of-the-evidence standard. That is, we do not have before us a case where "the law authorizes review under the substantial evidence rule, or ... the law does not define the scope of judicial review...." Therefore, this Court is *not* authorized to reverse or remand the rate order on the ground that the Commission employed an improper method in calculating the rates. *Railroad Commission of Texas v. Houston Natural Gas Corp., supra; Railroad Commission of Texas v. Galveston Chamber of Commerce, supra.* Because appellants have contended *only* that the Commission employed an improper

method in calculating the rates, and because the appellants have *not* proven by a preponderance of the evidence that the rates are unreasonable and unjust to it or them, we are required on this basis *alone* to overrule appellants' first two points of error and affirm the trial-court judgment. Art. 911b, § 20. If, contrary to our holding, review of the rate order *is* confined to the agency record, this manner of review is inconsistent with the preponderance-of-the-evidence *scope* of review. *Bell, supra.* However, this inconsistency cannot alter the fact that the scope of the review provided by the law under which review is sought is the preponderance-of-the-evidence standard. Rather, we think that this inconsistency strongly indicates that the manner of review authorized by law *is* trial de novo.

For these reasons, we conclude that the Supreme Court's broad statements in *Bell* and *Entex* were not intended to be taken in their most universal sense. *Bell* and *Entex* involved review of rate orders under PURA § 69; that statute was enacted after APTRA, *without* provisions clearly invoking the trial de novo provisions of APTRA § 19(c). PURA § 69 also *expressly* required judicial review of rate orders under the substantial evidence rule, and it contained the anomalous requirement that the district court review the *same rate order* by the preponderance of the evidence standard with respect to the issue of confiscation. None of these statements apply to the judicial review provisions of art. 911b § 20.

On motion for rehearing the Commission and CCMFA have vigorously protested our construction of art. 911b, § 20 and APTRA § 19(e) to require review of rate orders by trial de novo and to preclude application of the substantial evidence rule. They argue that substantial-evidence-rule review confined to the agency record is far preferable as a matter of public policy to trial de novo, and so it would appear. They also argue that the trial de novo is inappropriate because of the provision of APTRA § 19(b)(3) that an agency order is vacated when the

petition for review is filed. We have construed these provisions according to the legislative intent which is manifest in the language used in APTRA and art. 911b, § 20. If appellees find these provisions unsatisfactory, their remedy lies in the Legislature and not with this Court.

In appellants' third and final point of error, they challenge the Commission's authority to give the rate order an effective date preceding the latest date that the order could become final and appealable under APTRA § 16(c). The effective date assigned to the order by the Commission was a date following by one week the date the order was entered.

The Supreme Court of Texas has sustained the Commission's action in assigning to a rate order an effective date that fell *after* the date the Commission was directed under APTRA § 16(d) to enter a final order in a contested case, but long *before* the order was actually entered. *Railroad Commission of Texas v. Lone Star Gas Co.*, 656 S.W.2d 421 (Tex.1983). The Court held that the effective date fixed by the Commission must be upheld absent an abuse of discretion. In *Lone Star*, the utility contended that the rate order had not been fixed early enough to compensate the utility for "regulatory lag." In contrast, appellants complain in the present appeal that the effective date was fixed too soon. However, they do not suggest that the effective date given the order by the Commission resulted in increased charges for carrier services that had already been consumed and paid for by them. Indeed, the Commission's action in delaying the effectiveness of the order for a week following its entry may have been the subject of complaint by the carriers, for in *Lone Star*, the Court stated that "[t]he Commission could not simply postpone the effective date of new rates to a point in time after the issuance of its final order." *Id.* at 426.

We overrule appellants' third ground of error.

Finding no error, we affirm the judgment of the district court.